LOTTINGER, Judge.
The petition in this matter reads as follows:
1.
“That plaintiff and Lillian Gordon were married on the 19th day of November, 1928, and have lived together as man and wife since that date. That at the time of their marriage, Lillian Gordon Willis did not have any separate property or funds and she has not received any separate property or funds by donation or otherwise since said date. That all of the property accumulated by either of them entered the community of acquets and gains existing between them. That there has never been a separation of bed or board or of property between petitioner and his said wife.
2.
“That on December 11, 1943, plaintiff’s wife, Lillian Gordon Willis, with plaintiff’s knowledge and consent, purchased from Mrs. Mary Wells for a
consideration of $285.00 cash, the following described property, to-wit:
(Herewith follows a description of Lots 17 and 19 of Square 2 of Wells-place in the City of Baton Rouge)
as will be more fully shown by deed passed before John T. Laycock, Notary, and recorded in Conveyance Book 555, page 437, of the Records of the Parish, a certified copy thereof being attached hereto and made a part hereof.
3.
“That although the above referred to deed stated that the property described therein was purchased with her separate and paraphernal funds, under separate management and for her separate estate, plaintiff’s wife had no separate paraphernal funds as any funds that she had at that time or since was earned during their marriage and while living together as man and wife; therefore, entered the community of acquets and gains existing between them.
4.
“Plaintiff further alleges that he signed the above referred to deed only as an accommodation to his wife, and under the belief that his signature was necessary in order to authorize her to purchase the said property; he being without knowledge that the separate and paraphernality clause was embodied in said deed, and/or the meaning of same.
5.
“Plaintiff further alleges that his said wife, Lillian Gordon Willis, without his knowledge or consent, did, on February 13, 1947, sign a document which purported to transfer said above described property to her father, Charles J. Gordon. That said document shows a cash consideration of Two Hundred Fifty ($250.00) Dollars when in realty there was no considera *101 tion paid for the purchase of said property. That the document further shows that it was passed and executed before William M. Fauver, a Notary Public, and Harry Sharp and Mirt Strenzke, witnesses, when in fact plaintiff’s wife Lillian Gordon Willis, executed the purported act of sale in her own home, and out of the presence of either witnesses or a Notary Public.
6.
“Plaintiff further alleges that there was never any intent on the part of his wife to deed said property to her said father, but that she was laboring under the impression that she was assisting him in borrowing some money in order to buy food and clothing as he was aged and in bad health at the time. That regardless of her intent, his wife could not have deeded said community property to her father without the authorization of petitioner, as head and master of the community.
7.
“That, therefore, the above referred to deed from Lillian Willis to Charles J. Gordon is null and void ‘ab initio’, and did not have the effect of conveying this property to the said Charles J. Gordon.
8.
“Plaintiff alleges further that the said deed from his wife to her father was a simulation, and a sham as there was no consideration paid for the said property, and the act was not passed before a notary and two witnesses as required by law, and is therefore not a deed translative of title.
9.
“That plaintiff did not authorize his said wife to execute said deed; in fact that he had no knowledge of said purported transfer of said property until after the death of his wife’s father as they had permitted him to live on and occupy the premises during his lifetime as an accommodation and without the payment of rent therefor.
10.
“That the said Charles J. Gordon died on or about July 23, 1954, leaving a will in which he willed and bequeathed all of his property to Daisey Sanders Gordon, to whom he was married and with whom he was living at the time of his death, as will be more fully shown by the probate proceedings No. 9460 and the Judgment rendered therein on August 10, 1954 and recorded in Conveyance Book No. 1104, page No. 371 of the records of this Parish.
11.
“That the said Daisey Sanders Gordon, having been appointed executrix of said Charles J. Gordon’s estate, took possession of the above described property, after the death of Charles J. Gordon, and has rented said property since August 10, 1954, or for a total of twenty five (25) months, at a monthly rental of Twenty Five and no/100 ($25.00) Dollars per month, having received a total of Six Hundred Twenty Five and no/100 ($625.00) Dollars as rental therefor to which plaintiff is entitled as owner of said property.”
The prayer is for judgment decreeing the purported sale from Lillian Gordon Willis to Charles J. Gordon null and void and further seeks the recovery of the sum of $625 received by the defendant as rental on the property.
The defendant filed an exception of no right of action and a plea of estoppel, both of which were maintained by the Lower Court, and the matter is now before us on an appeal taken by the plaintiff.
We find the judgment appealed from to be correct. Our Supreme Court in the case of Pfister v. Casso, 161 La. 940, 109 So. 770, was presented with a similar *102 set of facts, the question being whether the property was community and thus inherited by the husband, or was separate and thus was inherited by collaterals. The court said:
“Of course, such a declaration by the husband does not bind his forced heirs nor his creditors (or creditors of the community) whose claims arose before such purchase, Kerwin v. [Hibernia] Insurance Company, 28 La.Ann. 312; Kerwin v. [Hibernia] Insurance Company, 35 La.Ann. 33. But, except as to these, ‘the rule has been repeatedly affirmed that a husband who has been a party to an act of purchase in which it is declared that the price belonged to the wife in her paraphernal right, and that the property is to be such, cannot afterwards contradict it; * * * the rule is founded on considerations of public policy and for the security of titles.’ ”
In this case, as in the Pfister case, there are no forced heirs of the husband, as he is still living, and there is no suggestion that there are any creditors whose rights may be affected by the estoppel resulting from the said declaration in the deed where plaintiff’s wife acquired the property.
The petition does contain the recital that the plaintiff signed the deed without knowledge that the declaration was in same, but as stated by the Supreme Court in the case of Rousseau v. Rousseau, 209 La. 428, 24 So.2d 676, 677, where a similar allegation was involved, it was held:
“It is incumbent on a person before signing an instrument to read it if he ' can read, and if not, to have it read to him and to listen attentively thereto.”
Incidentally, in the Rousseau case, the rule of estoppel was affirmed by use of the following language:
“ * * * The acts by which the titles were acquired, and in the execution of which appellant joined, contained the declarations that the wife was purchasing with her separate and paraphernal funds, under her own administration and control, and for her separate estate. Thus, the ruling was predicated on the well settled principle of law, that a husband who has been a party to an act of purchase in which it is declared that the price belonged to the wife in her paraphernal right, and that the property is to be such, cannot afterwards contradict it.”
For the reasons assigned, we are of the opinion that the plea of estoppel- is sound and should be maintained.
Judgment affirmed.